## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**DERRICK HOWARD AND**
**CHRISTOPHER ALLEN FROST**,

                Plaintiffs,

    v.                                  **Case No. 14-cv-237-pp**

**BYRAN BARTOW, MARY KLEMZ,**
**BRIAN BANTLEON, THOMAS MICHLOWSKI,**
**DR. MICHELE ANDRADE, LOYDA LORIA,**
**CARLOS GAANAN, DR. CHANDRA SHEKAR,**
**AND ROBIN MEIKLEJOHN,**

                Defendants.

---

### DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 39), DENYING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 35, 49), GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DECISION/JUDGMENT (DKT. NO. 52); DENYING PLAINTIFFS' MOTION TO APPOINT COUNSEL (DKT. NO. 55), AND DENYING PLAINTIFFS' MOTION FOR JUDGMENT (DKT. NO. 62)

---

The pro se plaintiffs, Derrick Howard and Christopher Allen Frost, are Wisconsin state prisoners. They filed this case under 42 U.S.C. §1983. United States District Judge Lynn Adelman (the judge assigned to the case at the time the plaintiffs filed their complaint) screened the complaint pursuant to 28 U.S.C. §1915A, and determined that the plaintiffs' allegations that the defendants denied them medically necessary athletic shoes for their chronic foot pain stated an Eighth Amendment medical care claim. Dkt. No. 8. On December 30, 2014, the clerk's office reassigned the case to this court. The

parties have filed cross-motions for summary judgment.[1] For the reasons explained below, the court denies the plaintiffs' summary judgment motions, grants the defendants' summary judgment motion, denies as moot other motions from the plaintiffs, and dismisses this case.

## I.    FACTS[2]

The plaintiffs claim that the defendants denied them medically necessary athletic shoes for their chronic foot pain, in violation of the Eighth Amendment to the United States Constitution. Dkt. No. 1. The plaintiffs allege that the defendants acted with deliberate indifference to their serious medical needs by not allowing them to order athletic shoes from the Eastbay Shoe Company, which sells the shoes they need to reduce their foot pain. Id. at 7.

### A.  Parties

The plaintiffs were incarcerated at the Wisconsin Resource Center (WRC) at all times relevant to this case. The "WRC is a specialized mental health facility established as a prison under Wis. Stat. §46.056. The facility operates as a secure treatment center and is managed by the Wisconsin Department of Health Services ("DHS"), Division of Mental Health and Substance Abuse Services." Dkt. No. 41 at 20.

---

[1] Plaintiff Frost filed a motion for summary judgment which only he signed (Dkt No. 35). Plaintiffs Howard and Frost subsequently filed an identical motion for summary judgment which they both signed (Dkt. No. 49). The court will deny as moot the first summary judgment motion and consider the one that both plaintiffs signed.

[2] The facts are taken from the defendants' proposed findings of fact (Dkt. No. 41), which are undisputed, and from the plaintiffs' complaint (Dkt. No. 1).

2

Defendant Byran Bartow is WRC's institution superintendent (director), Dkt. No. 41 at 2, and at the time of the events alleged in the complaint, Dr. Carlos Gaanan was a physician supervisor, id., and Dr. Loyda Loria was a physician, id. at 2-3.

Defendant Robin Meiklejohn is a psychiatric care supervisor at WRC. Id. at 3. Meiklejohn also has performed the role of mail/property supervisor since July 2013. In this role, her duties include supervising the mail and property areas, as well as inspecting incoming mail and property to ensure they meet safety and security requirements. Id. at 3-4.

Defendant "Dr. Thomas Michlowski was employed by DHS as Psychiatrist Management (Institution Medical Director) at WRC." Id. at 20. His duties included serving as the responsible physician, organizing and administering medical staff and medical staff functions, and ensuring quality services were timely delivered. Id.

Defendant Mary Klemz is WRC's deputy warden, Dkt. No. 1 at 4, and Brian Bantleon is the security director, id.; Dr. Michele Andrade and Dr. Shekar are psychiatrists at WRC. Id.

B. Medical treatment at WRC

At WRC, each inmate has a treatment team to assist with his psychiatric and general medical needs. Id. at 21. When an inmate has a concern or request regarding any type of psychiatric, psychological or medical need, he submits a health services request to his attending physician, a psychiatrist. A nurse initially reviews the concern or request to determine if it requires immediate

3

action. If the concern does not require immediate attention, the request is given to the attending psychiatrist for review. The psychiatrist reviews the inmate's concern and determines whether it would best be handled by psychiatry, a primary care physician, or an outside specialist. Id. If an inmate submits a concern regarding a non-psychiatric matter, such as foot pain, the psychiatrist refers the matter to primary care. The primary care doctor then determines the best course of treatment, including whether the inmate needs any off-site consultation with a different provider. Id. at 22.

C. Derrick Howard's medical treatment for foot pain.

Plaintiff Howard complained of foot pain prior to his arrival at WRC in May 2012. Id. at 8. On November 2, 2012, Dr. Loria saw Howard for complaints of persistent foot pain, and upon evaluation, Dr. Loria ordered a podiatry consult to address his concerns. Dr. Loria noted that Howard complained of chronic foot pain, which was not relieved by different arch supports, physical therapy, or non-steroidal anti-inflammatory drugs. Id.

On December 3, 2012, Howard saw Dr. Corey Wesner, a podiatrist, who indicated that Howard suffered from capsulitis in his right foot. Id. at 8-9. Capsulitis is a condition in which the area surrounding the joint at the base of the toe becomes inflamed. Id. at 9. Dr. Wesner recommended, "pt allowed to get quality athletic shoes." Id. at 8-9,¶43; Gaanan Decl. ¶9; Loria Decl. ¶10, Ex. 1001 at 33. On December 3, 2012, someone noted in Howard's medical file that Howard "can buy own shoes (high arched shoes) bec. of chronic foot pain from

approved vendor." Id. at ¶45; Gaanan Decl.¶11; Loria Decl. ¶12, Ex. 1001 at 19; Meiklejohn Decl. ¶32.

Howard's medical order for athletic shoes did not have a specific end date, but "orders generally are effective for twelve months or until discontinued or renewed." Id. at ¶46. Thus, the order would have expired on December 3, 2013, and any order from an unapproved vendor after that date would have required a new Medical Restrictions/Special Needs form. Id. at ¶50.

Howard submitted a health service request dated December 2, 2013, requesting an updated order for shoes. Id. at ¶58. A response was provided on December 2, 2013, with a note stating, "per medical MD – no special permission given anymore. Can order shoes – following security guidelines from outside company." Id. at ¶59; Loria Decl. ¶18, Ex. 1001 at 69.

Howard submitted another health service request dated December 3, 2013, in which he requested to be seen by podiatry about updating his order for shoes. Id. at ¶60. A response was provided on December 3, 2013, and noted, "As you were advise [sic] earlier today – WRC no longer accepts orders for shoes outside of unapproved vendors. You may order shoes from catalog that is approved by security." Id. at ¶61; Loria Decl. ¶20, Ex. 1001 at 70.

Dr. Loria saw Howard on December 16, 2013, when he again complained of foot pain. Dr. Loria indicated in her progress note that podiatry previously had seen Howard, and that Howard had obtained orthotics from the podiatrist. She advised Howard to continue wearing the orthotics, and she ordered pain medication. Id. at ¶52.

5

She saw Howard again on March 26, 2014, when he complained of cramping in both feet at night. This time, Dr. Loria advised Howard of various stretching exercises he could perform to help with the cramping. Id. at ¶53.

Dr. Gaanan met with Howard on April 29, 2014, when he complained of a reoccurrence of pain between his first and second toes on his right foot. Dr. Gaanan referred Howard to podiatry, and noted on the Off Site Consultation Request form that Howard had previously done well after a steroid shot. Id. at ¶54.

Dr. Loria reviewed the institution approved catalogs, Jack L. Marcus and Union Supply, and determined that these catalogs contained an athletic shoe that would suit Howard's needs. Id. at ¶63. At this point, the defendants argue, WRC medical staff had adequately addressed plaintiff Howard's needs, because he could order appropriate shoes from one of the approved vendors. Id. at ¶64.

D. Christopher Frost's medical treatment for foot pain.

Dr. Loria met with Frost on March 9, 2010, for complaints of foot pain. Id. at ¶86. Dr. Loria determined that Frost might suffer from plantar fasciitis, and she ordered arch supports. Plantar fasciitis is a common type of heel pain, involving inflammation of the tendons at the bottom of the foot. Id.

On January 25, 2013, Dr. Gaanan saw Frost, who complained of numbness in his left foot. Id. at ¶88. Upon further evaluation, Dr. Gaanan determined that Frost's symptoms would be best treated with a topical pain medication. Id.

6

Dr. Gaanan again saw Frost on July 8, 2013, when he complained of pain in his left foot. Id. at ¶90. Dr. Gaanan noted that Frost previously had been sent to podiatry where he received a steroid shot and was measured for orthotics. Dr. Gaanan determined that a follow-up appointment with podiatry was appropriate to address Frost's concerns. Id. at ¶91. On July 8, 2013, Dr. Gaanan completed a request for Frost to be evaluated by podiatry regarding capsulitis in his left foot, and to determine whether orthotics were necessary for his foot pain. Id. at 93.

Frost met with a podiatrist, Dr. Wesner, on August 1, 2013. Id. at ¶95. Dr. Wesner completed the Off Site Consultation Report, indicating "recommend athletic shoes." Id. at ¶96; Gaanan Decl. ¶33, Ex. 1000 at 22; Loria Decl. ¶ 35. Dr. Gaanan reviewed Dr. Wesner's recommendation and on August 1, 2013, placed an order in Frost's medical record that he could purchase his own athletic shoe. Id. at ¶97.

Dr. Gaanan reviewed the institution approved catalogs, Jack L. Marcus and Union Supply, and determined that these catalogs contained an athletic shoe that would suit Frost's needs. Id. at ¶100. A Medical Restrictions/Special Needs form was completed on August 1, 2013, noting, "Inmate may purchase his own athletic shoes." Id. at ¶98; Gaanan Decl. ¶ 35, Ex. 1000 at 31. A subsequent Medical Restrictions/Special Needs form was completed on August 5, 2013, noting, "Inmate may buy own athletic shoes from the approved WRC footware [sic] provider." Id. at ¶99; Gaanan Decl. ¶36, Ex. 1000 at 30.)

7

Dr. Loria again saw Frost on November 8, 2013, when he complained of foot pain, and indicated he had only been wearing his orthotics every other day. Id. at ¶101. Dr. Loria advised Frost that he should wear the orthotics as recommended by the podiatrist, and she ordered gel insoles to be worn with his shoes. Id.; Loria Decl. ¶37; Gaanan Decl., Ex. 1000 at 3, 4.

In November 2013, Frost sent the property manager, Meiklejohn, an Interview/Information Request that stated:

> I have a medical order to order shoes from East Bay Company for my foot disorder. My relatives told me I can send them the order for my shoes. – Can you tell me what I need to do before I send them the order – because I know I'm supposed to get your prior approval.

Id. at ¶103; Meiklejohn Decl. ¶42; Interview/Information Request form, undated, Dkt. 1-2 at 24. Meiklejohn responded to Frost's request as follows: "Let me know before they order the shoes what ones [sic] you want so I can approve them before you order. I need the HSU approval slip as well which I don't have. I called HSU and they said you would only be able to order from JL Marcus/Union Supply." Id. at ¶104; Meiklejohn Decl. ¶ 43; Interview/Information Request form, undated, Dkt. 1-2 at 24. Meiklejohn did not have information from medical staff authorizing Frost to order an athletic shoe from an unapproved vendor, and her understanding from medical staff was that such authorization did not exist. Id. at ¶105.

Frost continued treatment with Dr. Wesner after August 1, 2013, to address his podiatry needs. On June 16, 2014, seven days after Frost

8

transferred out of WRC, it was noted in his medical file, "State footwear to be athletic shoes indef." Id. at ¶109; Gaanan Decl. ¶39, Ex. 1000 at 9.

E. WRC policy on purchasing from outside vendors.

Inmates may purchase new property items from catalogs of approved vendors using their own funds, so long as they maintain their property within allowable limits and the property meets security requirements. Id. at ¶15. An inmate's family also can order new property items from catalogs of approved vendors and send the property to the inmate. Id. at ¶16.

The current approved vendors at WRC are Jack L. Marcus and Union Supply. Id. at ¶17. Jack L. Marcus and Union Supply carry a wide variety— fifty-one different styles, of quality, brand-name athletic shoes. Id. at ¶29. Eastbay was an approved vendor until seven or eight years ago, when the Wisconsin Department of Corrections switched to contracted vendors. Id. at ¶34.

WRC uses approved vendors for security reasons, as all property must meet security requirements to maintain the safety and order of the institution. Id. at ¶18. The approved vendors offer items that have been approved for secure institutions. Id. at ¶19. If there were no restrictions placed on the vendors from whom an inmate could order items, it would consume significant time and resources for security staff to process each item to ensure it met security requirements. Id. at ¶20. Security-related concerns specific to shoes include that the shoe could contain a pocket in the sole, metal or hidden zippers, all of which could pose a security risk. Id.

9

Upon arrival at WRC, an inmate is provided with one pair of standard, state-issued, black Velcro shoes. Id. at 21. Each inmate also may purchase two pairs of personal shoes a year. Id.

If medical staff determines that an inmate needs to have an athletic shoe to properly suit his medical needs, medical staff can complete a Medical Restrictions/Special Needs form authorizing the inmate to order an athletic shoe from an unapproved vendor. Id. at ¶23. Once completed, a Medical Restrictions/Special Needs form is then shared with security and property staff who control and regulate what property an inmate may possess. Id. at ¶27. When the property manager (at that time, defendant Meiklejohn) receives information from the health services unit that an inmate may order from an unapproved vendor, she keeps record of the information and reviews the property when it comes in to ensure compliance with security requirements. Id. at ¶39. An inmate can order an athletic shoe from an unapproved vendor if two conditions are satisfied: (1) the inmate has a Medical Restrictions/Special Needs form authorizing him to order an athletic shoe from an unapproved vendor, and (2) the athletic shoe meets security requirements. Id. at ¶36.

Since taking on the duties of mail and property supervisor in July 2013, defendant Meiklejohn requires that medical staff specifically indicate on the Medical Restrictions/Special Needs form that they are authorizing an order from an unapproved vendor. Id. at ¶24. In contrast, the previous mail/property supervisor accepted a Medical Restrictions/Special Needs form which stated

simply that an inmate "may purchase own athletic shoe" as authorization to order from an unapproved vendor. Id. at ¶25.

## II.  DISCUSSION

A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. <u>Case Law Regarding Deliberate Indifference to a Serious Medical Need</u>

"The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" <u>Arnett v. Webster</u>, 658 F.3d 742, 750 (7th Cir. 2011) (quoting <u>Rodriguez v. Plymouth Ambulance Serv.</u>, 577 F.3d 816, 828 (7th Cir. 2009)); <u>see also</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976)). "Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs." <u>Arnett</u>, 658 F.3d at 750 (citing <u>Estelle</u>, 429 U.S. at 104). "[A] claim based on deficient medical care must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition." <u>Arnett</u>, 658 F.3d at 750 (citation omitted). "[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." <u>Rodriguez</u>, 577 F.3d at 828 (quoting <u>Estelle</u>, 429 U.S. at 104).

For the purposes of summary judgment, the defendants do not dispute that the plaintiffs had a serious medical need. Thus, the court turns to whether the defendants acted with deliberate indifference.

To demonstrate deliberate indifference, a plaintiff must show that the defendant "acted with a sufficiently culpable state of mind," something akin to recklessness. <u>Roe v. Elyea</u>, 631 F.3d 843, 857 (7th Cir. 2011). A prison official acts with a sufficiently culpable state of mind when he or she knows of a

12

substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Id. A prison official cannot be found liable under the Eighth Amendment unless the official "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" Arnett, 658 F.3d at 759 (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th Cir. 1998)). Deliberate indifference does not, however, include medical malpractice; "the Eighth Amendment does not codify common law torts." Duckworth v. Ahmad, 532 F.3d 675, 679 (7th Cir. 2008) (citation omitted).

1. *Dr. Gaanan and Dr. Loria*

In their motion for summary judgment, the plaintiffs first acknowledge that there are no genuine issues of material fact in dispute. According to the plaintiffs, the issue in this case is whether there ever has existed at WRC "the Policy and Procedure referenced in Plaintiffs complaint." Dkt. No. 49 at 2. It is not entirely clear what "policy and procedure" the plaintiffs reference—the complaint indicates only that "WRC security has stopped allowing inmates from ordering from unapproved catalog vendor's . . . ." Dkt. No. 1 at 9.

The plaintiffs assert that if such a policy existed, the issue becomes whether the policy effectively acted as a new property rule for WRC's inmates and, if so, whether that new "rule" was properly promulgated within the

meaning of Wis. Stat. §227.01 (13). Id. The plaintiffs appear to concede that the policy of limiting purchases to approved vendors existed, and seem to assume that the policy constituted a "rule." Id. at 2. Based on this concession and assumption, they contend that the policy/rule was invalid because it was not promulgated pursuant to the state statute's formal rule-making procedures. Id.

The plaintiffs also submit the affidavit of inmate Lenzy Hilliard, who alleges that WRC permitted him to order shoes from Eastbay because he had a medical special needs/restriction based on his treating physician's recommendation. Dkt. No. 35 at 8.

Finally, the plaintiffs argue that the defendants were deliberately indifferent to their serious medical needs. Id. at 6.

The defendants, in their summary judgment motion, contend that Dr. Gaanan and Dr. Loria provided the plaintiffs with appropriate medical treatment. They argue that the plaintiffs' disagreement with Drs. Gaanan and Loria's decisions that they could order quality athletic shoes from one of WRC's approved vendors, and not from Eastbay, does not support a claim for deliberate indifference. Dkt. No. 40 at 12-13. The defendants also contend that the plaintiffs' disagreement with WRC's policy with respect to inmates' ability to purchase shoes from unapproved vendors does not support an Eighth Amendment claims:

> Howard and Frost seemingly take issue with the change in policy that was implemented when Supervisor Meiklejohn became property manager in July 2013. Since then, a medical authorization has to specifically indicate that it authorizes an order from an unapproved vendor. Howard and Frost's treating

14

physicians determined it was not medically necessary to provide an authorization for them to order their shoes from an unapproved vendor.

Howard and Frost sent requests to their physicians specifically requesting consideration to order shoes from an unapproved vendor. Both doctors reviewed the athletic shoes offered by the approved vendors, and specifically responded to Howard and Frost that they were authorized to purchase shoes from *approved vendors*. The evidence supports only the conclusion that medical staff was aware that they could provide authorization for Howard and Frost to order shoes from an unapproved vendor, but they determined that was not medically necessary. This decision was reasonable. It conformed with the podiatrist's recommendations that Howard and Frost be able to purchase quality athletic shoes. Howard and Frost present no allegation that a specific shoe with unique features was medically necessary, and they present no evidence to support a conclusion that quality athletic shoes were not available from approved vendors.

Dkt. No. 40 at 13-14.

In response to the defendants' motion for summary judgment, Frost contends[3] that the defendants do not present a plausible defense for their actions. Dkt. No. 47 at 1. Frost asserts that the defendants have presented conflicting and internally contradictory arguments. He states that first, the defendants argue that the WRC no longer allows inmates to order shoes from unapproved vendors. Id. at 2 (citing Dkt. No. 47 at 2, citing Dkt. No. 41 at ¶61, stating "As you were advised earlier today – WRC no longer accepts orders for shoes outside of unapproved vendors. You may order shoes from catalog that is approved by security.") He argues that later, they contradict themselves, by stating, "If medical staff determines it is necessary for an inmate to have an

---

[3] Howard did not sign the response.

athletic shoe to properly suit their medical needs, medical staff can complete a medical restrictions/special needs form authorizing the inmate to order an athletic shoe from an unapproved vendor." Id. (citing Dkt. No. 40 at 7; see also Dkt. No. 47 at 2, citing Dkt. No. 41 at ¶23.) Frost also asserts that "[i]nstitution catalogs do not sell quality name-brand shoes that plaintiffs need to help reduce their chronic/persistent foot pain. Their shoes are only quality in 'name-brand,' only." Dkt. No. 47 at 2.

Because Drs. Loria and Gaanan are medical professionals, the court can find that they were deliberately indifferent only if their treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards . . . as to demonstrate" that they were not relying "on a professional judgment." Youngberg v. Romeo, 457 U.S. 307, 323 (1982) (internal quotation marks and citation omitted); Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008). Conduct that is akin to criminal recklessness—but not medical malpractice or negligence—violates the Eighth Amendment. Farmer, 511 U.S. at 836-39.

> A prisoner may establish deliberate indifference by demonstrating that the treatment he received was "blatantly inappropriate." Greeno v. Daley, 414 F.3d 645, 654 (7th Cir. 2005) (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)). Making that showing is not easy: "A medical professional is entitled to deference in treatment decisions unless 'no minimally competent professional would have so responded under those circumstances.'" Sain v. Wood, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th Cir.1998)). Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by

16

> itself, to establish an Eighth Amendment violation. <u>Johnson v. Doughty</u>, 433 F.3d 1001, 1013 (7th Cir. 2006). The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment. <u>Roe v. Elyea</u>, 631 F.3d 843, 857 (7th Cir. 2011); <u>Sain</u>, 512 F.3d at 895.

<u>Pyles v. Fahim</u>, 771 F.3d 403, 409 (7th Cir. 2014).

Here, Dr. Wesner recommended that Howard get quality, high-arched athletic shoes, and he recommended that Frost get athletic shoes. All of the evidence provided by the defendants indicates that Jack L. Marcus and Union Supply, offer quality, brand-name athletic shoes. Dr. Loria and Dr. Gaanan determined that the medically necessary athletic shoes Dr. Wesner had recommended were available from one of the two WRC-approved vendors. Thus, the court concludes that Dr. Loria and Dr. Gaanan complied with Dr. Wesner's medical recommendation.

The plaintiffs disagree with the conclusion reached by Drs. Loria and Gaanan, but provide no evidence supporting their assertion that the shoes from the approved vendors failed to meet their needs. Their disagreement with Dr. Loria and Dr. Gaanan's decisions does not support a claim for deliberate indifference. <u>See, e.g.</u> <u>Pyles</u>, 771 F.3d at 409; <u>Johnson v. Doughty</u>, 433 F.3d 1001, 1012–13 (7th Cir. 2006). Their belief that they did not receive adequate care is no more than a refusal to accept the professional judgment of their treating physicians. <u>See</u> <u>Berry v. Peterman</u>, 604 F.3d 435, 441 (7th Cir. 2010). The plaintiffs are not doctors; their lay opinions that shoes from Eastbay were

17

necessary do not constitute evidence that the defendants' treatment decisions were such a "substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Estate of Cole v. Fromm, 94 F.3d 254, 262 (7th Cir. 1996).

For these reasons, the court will grant the defendants' motion for summary judgment on the plaintiffs' Eighth Amendment deliberate indifference claims against defendants Loria and Gaanan.

2. *Security Staff defendants: Bartow, Meiklejohn, Klenz, and Bantleon*

The defendants contend that as administrative and security personnel, defendants Bartow, Meiklejohn, Klenz and Bantleon appropriately deferred to Dr. Gaanan and Dr. Loria's medical judgment that athletic shoes from approved vendors met the plaintiffs' medical needs. The plaintiffs' summary judgment materials do not address this contention.

Generally, non-medical professional defendants are entitled to rely on medical professionals' determinations regarding inmates' medical treatment. See McGee v. Adams, 721 F.3d 474, 483 (7th Cir. 2013) (citing King, 680 F.3d at 1018 (officers are "entitled to defer to the judgment of jail health professionals" so long as they do not ignore a detainee)); Arnett, 658 F.3d at 755 ("Non-medical defendants . . . can rely on the expertise of medical personnel."). "The only exception to this rule is that nonmedical officers may be found deliberately indifferent if 'they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not

18

treating) a prisoner.'" McGee, 721 F.3d at 483 (quoting King, 680 F.3d at 1018).
At the same time, however, "[n]on-medical defendants cannot simply ignore an
inmate's plight." Arnett, 658 F.3d at 755 (citing Greeno, 414 F.3d at 656).

Aside from defendant Meiklejohn, the record makes little mention of the
non-medical professional defendants. There is no indication that any WRC
security or administrative personnel defendant had reason to believe that
athletic shoes from Jack L. Marcus or Union Supply, as opposed to Eastbay,
would be harmful to the plaintiffs, or would not be sufficient to address their
legitimate medical needs. The court will grant the defendants' motion for
summary judgment as to defendants Bartow, Klenz and Bantleon.

With regard to Meiklejohn and her decision to require medical
authorization forms to specifically state that an inmate could order from an
unapproved vendor, the plaintiffs appear to question whether that policy
complies with Wis. Stat. §227.01(13).[4] That statute provides definitions for
Chapter 227 of the Wisconsin Statutes, Administrative Procedures and Review.
It is not clear how the plaintiffs believe that statute applies in this case. In any
event, even if the manner in which Meiklejohn implemented the no-
unapproved-vendors policy violated Wisconsin state law, the Seventh Circuit
has held that "a violation of state law is not a ground for a federal civil rights

[4] "'Rule' means a regulation, standard, statement of policy, or general
order of general application which has the effect of law and which is
issued by an agency to implement, interpret, or make specific legislation
enforced or administered by the agency or to govern the organization or
procedure of the agency. 'Rule' includes a modification of a rule under s.
227.265. 'Rule' does not include, and s. 227.10 does not apply to, any
action or inaction of an agency, whether it would otherwise meet the
definition under this subsection[.]" Wis. Stat. 227.01(13)

19

suit." Guajardo-Palma v. Martinson, 622 F.3d 801, 806 (7th Cir. 2010). Thus, the court will grant the defendants' motion for summary judgment as to defendant Meiklejohn.

### 3. Defendants Dr. Michlowski, Dr. Shekar and Dr. Andrade

The complaint alleges that Dr. Michlowski, the institution medical director, "was an active participant in the conspiracy against plaintiffs . . . in denying them to be able to order to shoes that the Podiatrist ordered from them to be able to buy." Dkt. No. 1 at 11. They further asserted that defendant Michlowski "was unable to provide medical treatment to both plaintiffs' for the pain in their feet [s]o he had both plaintiffs sent out of the insti. to be seen by a podiatrist/specialist for these problems which incidently [sic] happen to be the exact same foot disorder." Id. The complaint alleges that while plaintiff Howard first went through defendant Andrade (his psychiatrist) and told her about his foot pain, she refused to refer him to the doctor to continue treatment or to recommend the medical order for his shoes. Id. at 12. Plaintiff Frost makes the same complaint against his psychiatrist, Dr. Shekar. Id. at 20.

The defendants, on the other hand, argue that director Michlowski and psychiatrists Andrade and Shekar appropriately deferred treatment decisions regarding Howard and Frost's complaints of foot pain to the treating physicians. Dkt. No. 40 at 17. Dr. Michlowski indicated that he did not recall having any involvement with the plaintiffs in regard to treatment for their foot pain. Dkt. No. 41 at 22, 23. There is no evidence that these three defendants

provided Howard or Frost with direct patient care for their complaints of foot pain.

The plaintiffs have not directly addressed the arguments regarding these three defendants, either in their response to the motion for summary judgment or in their own motions for summary judgment. Indeed, the complaint concedes that Dr. Michlowski sent them out of the institution for treatment, which demonstrates that, far from being deliberately indifferent to their claims, he addressed their claims. Other than the plaintiffs' unsupported allegations in the complaint, there is no evidence in the record to support a finding that these defendants had any personal involvement in the events the plaintiffs describe. Accordingly, the court will grant the defendants' motion for summary judgment with regard to defendants Michlowski, Andrade and Shekar. See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007)("only persons who cause or participate in the violation, are responsible"); Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003) (commenting that §1983 defendant must have personally participated in constitutional deprivation); Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002) (noting there is no *respondeat superior* (supervisor) liability under §1983).

### III.    OTHER MOTIONS

On February 9, 2015, the plaintiffs filed a motion entitled "Motion for Decision/Judgment on Plaintiffs; "Summary Judgment-Motion," As a Matter of Law. Per: Fed. R. Civ. P. Rule's -50(b), & (d)." Dkt. No. 52. The motion asked for two things. First, it asked that the court rule on the plaintiffs' motion for

summary judgment. The plaintiffs had filed their motion on December 17, 2014; presumably they were concerned with the fact that two months had passed without their hearing from the court. Second, they asked that the court grant that motion for summary judgment, arguing that the only thing that would alleviate their continued suffering would be for the court to rule in their favor on their motion.

To the extent that the February 9, 2015 motion asks this court to rule on the plaintiffs' motion for summary judgment, it will grant that motion. This order constitutes the court's ruling on the motion. To the extent that the motion asks the court to grant the plaintiffs' motion for summary judgment, the court will deny the motion, for the reasons stated above.

On March 9, 2015, the plaintiffs filed a motion for appointment of counsel. Dkt. No. 55. The motion indicates that the plaintiffs' case is at a critical stage, with summary judgment motions pending, and that it would be best for the court to appoint counsel who could "arrange for settlement." Id. They further assert that counsel would "be best if this case goes on to trial, and counsel would be best to protect the legal guarantees of the plaintiffs." Id. The prior judge, Judge Adelman, denied the plaintiffs' previous requests for appointment of counsel, Dkt. No. 48, and at this point, the work is done. The plaintiffs both filed their own motions for summary judgment and responded to the defendants' motions. As the court has indicated above, it is denying the plaintiffs' motions and granting the defendants' motion, which will result in

this case being dismissed. There is nothing further for counsel to do. The court will deny the plaintiffs' motion to appoint counsel.

Finally, on July 30, 2015, the plaintiffs filed a motion entitled, "Plaintiff's Motion for <u>Judgment</u> Under Title VII,--- F.R.C.P. Rule 54(c) Demand for Judgment; Relief to be Granted." Dkt. No. 62. The body of the motion asks the court to award judgment in favor of the plaintiffs and order "that the Plaintiffs be allowed to order special comfort fitting shoes from a shoe vendor outside of the Two (2) approved catalog vendors approved by the Wisconsin Department of Corrections . . . ." <u>Id.</u> This motion appears to be a reiteration of the demands in the complaint and the demands in the plaintiffs' motion for summary judgment. As the court has discussed above, it is ruling in the defendants' favor on the substantive issues the plaintiffs have raised.

The court does note that in the title of the motion, the plaintiffs mention "Title VII." This is the first time in the history of this case the plaintiffs have mentioned "Title VII." "Title VII" commonly refers to Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex or national origin. The complaint makes no mention of Title VII, and nowhere in the entire case have the plaintiffs alleged any facts that would support an employment discrimination claim. The court will deny this motion.

## IV.    CONCLUSION

The court **DENIES AS MOOT** the plaintiff Frost's motion for summary judgment (Dkt. No. 35).

The court **GRANTS** the defendants' motion for summary judgment (Dkt. No. 39).

The court **DENIES** the plaintiffs' motion for summary judgment (Dkt. No. 49).

The court **GRANTS** the plaintiffs' motion for decision on summary judgment, to the extent that it issues this decision. The court **DENIES** the plaintiffs' motion for decision on summary judgment, to the extent that it asks the court to grant the plaintiffs' motion for summary judgment. (Dkt. No. 52).

The court **DENIES AS MOOT** the plaintiffs' motion to appoint counsel (Dkt. No. 55).

The court **DENIES** the plaintiffs' motion for judgment under Title VII. (Dkt. No. 62).

Dated in Milwaukee this 18th day of September, 2015.

BY THE COURT:

_____

HON. PAMELA PEPPER
United States District Judge